# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALLEN WILLIAMS**                     **CIVIL ACTION**

**VERSUS**                              **NO. 3:14-cv-382-JWD-SCR**

**E.I. du PONT de NEMOURS AND
COMPANY**

## RULING AND ORDER

Before the Court is Defendant E.I. du Pont de Nemours and Company's ("DuPont")
Motion to Dismiss Hostile Work Environment Claims Under Rule 12(b)(6). (Doc. 52.) Plaintiff
Allen Williams ("Williams") opposes the motion. (Doc. 55.) Also before the Court is Williams'
request for leave to amend his Complaint. (Doc. 55 at 7.) DuPont opposes the request. (Doc. 57
at 3.) The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-
5(f)(3). Oral argument is not necessary.

After careful consideration of the law, facts, and the arguments of the parties, DuPont's
motion is granted. Williams has failed to exhaust his administrative remedies for a hostile work
environment under Title VII because a hostile work environment claim cannot reasonably grow
out of the allegations of Williams' original EEOC charge and EEOC amendment. Further,
Williams has failed to allege sufficient facts to establish a hostile work environment under 42
U.S.C. § 1981. Finally, Williams' request for leave to amend his Complaint (Doc. 55 at 7) is
denied because his request is futile in that he seeks to allege untimely, unrelated, and conclusory
facts.

## I.      Relevant Factual and Procedural Background

The Court previously granted in part and denied in part DuPont's Motion for Partial
Dismissal. (Doc. 51.) However, the Court granted DuPont leave to file a motion to dismiss on

Plaintiff's hostile work environment claim because Plaintiff argued this claim in his Supplemental Memorandum in Opposition, (Doc. 40) which was the last filing made with respect to the previous motion to dismiss.[1] (Doc. 51 at 20.) Subsequently, DuPont filed a motion to dismiss on the hostile work environment claims. (Doc. 55.)

The Court need not recite the entire factual background of Plaintiff's original complaint because it is detailed in the Court's previous ruling. (Doc. 51 at 2-10.) Even so, the most salient facts surrounding Williams' EEOC charge merit repeating.

**A.  Plaintiff's EEOC Charge**

On September 13, 2010, Williams filled an EEOC charge ("the charge" or "original EEOC charge"). (Defendant's Exhibit A, Doc. 52-2 at 1.)[2] Williams alleged in the charge that he was subject to a schedule change on January 24, 2010 "for no reason" and that on April 10, 2010 he was written up after he complained to his supervisor, George Valentine. (*Id.*) Williams' asserted in the complaint that "[a]ccording to [Valentine] … the shift change occurred because [Williams] was weak and lacked confidence." (*Id.*) Further, "[t]he write-up ensured from incorrectly loading a chemical truck." (*Id.*)

Williams claimed in the charge that he was "discriminated against based on [his] race, black" and that he was "retaliated against." (*Id.*) He asserted that he was discriminated against because a less experienced, white, junior operator "was not moved." (*Id.*) Additionally, Williams alleged that he was retaliated against because he "was written up for a 'violation' that is not written in a safety manual or anywhere else stating a truck cannot have a hose still hooked up on the rear of a trailer even if it is properly secured." (*Id.*)

---

[1] "It is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x. 307, 315 (5th Cir. 2008). Logically, this applies to supplemental memorandum as well.
[2] As explained below in Part I(B), it is appropriate for the Court to consider Defendant's Exhibits.

On September 11, 2012, the EEOC issued a Dismissal and Notice of Rights to Williams. (Doc. 52-3 at 1.) On October 5, 2012, Williams requested that the EEOC reconsider its final determination and consolidate his charge with those of Leo Scott and Nathaniel Rapp. (Doc. 52-4 at 1-2.) The Field Director of the New Orleans Field Office then revoked the previous Dismissal and Notice of Right to Sue on October 11, 2012. (Doc. 52-5 at 1.)

On January 31, 2014, Williams submitted a supplement ("EEOC amendment") to his EEOC filing. (Defendant's Exhibit E, Doc. 52-6 at 1.) In that letter, Williams alleged that inclement weather occurred on January 24, 2014, making it unsafe for him to travel to work. (*Id.*) When this happened, he contacted his new supervisor, Elizabeth Cromwell, and explained that he would be unable to come to work. (*Id.*) She allegedly "responded that [Williams] would have to take a day of vacation[3] if he could not get to work." (*Id.*) Williams "returned to work after the weather improved" and "spoke with Kent Templet[4] …" who informed Williams that "he also missed work due to the weather but was not required to use a vacation day for the weather related absence." (*Id.*)

### B.  Present Motion

DuPont now moves this Court to dismiss Williams' hostile work environment claim under Federal Rule of Civil Procedure 12(b)(6).[5] DuPont attaches eight (8) documents to its motion to dismiss. As a preliminary matter, the Court must determine whether it is appropriate to consider these documents.

---

[3] Williams EEOC amendment alleged he was forced to take "a vacation day," (Doc. 52-6) while his original Complaint states he was forced to take "twelve hours of vacation." (Doc. 1 at 16 ¶ 61.) As Williams has alleged that he "worked [twelve] hour shifts," (Doc. 1 at 4 ¶ 17) these statements are consistent, and the court refers to both as a vacation day.

[4] While Williams alleged in his original Complaint that Templet is Caucasian, (Doc. 1 at 16 ¶ 61) there is no mention of Templet's race in his amendment letter to the EEOC. (*See* Doc. 52-6.)

[5] In this opinion, any and all further reference to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

The governing standard appears in Rule 12, its many exceptions mined in case law. In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6)[,] … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). Naturally, there are some exceptions to this ostensibly ironclad standard. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)) (citations and internal quotation marks omitted). As the Fifth Circuit has recently explained, "[i]f the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) [or 12(c)] motion into a motion for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n. 6 (5th Cir. 1991).

Here, DuPont's attachments consist of Williams' EEOC charge, right to sue letters, EEOC amendment, and several other related documents. (*See* Docs. 52-2 through 52-7.) These documents were referenced by Williams several times in either his original Complaint or First Amended Complaint. (*See*, generally, Docs. 1 and 13.) Further, Leo Scott and Nathaniel Rapp's

4

separate EEOC charges (Docs. 52-8 and 52-9) were referenced by Williams when he alleged that he requested for the EEOC to consolidate his charge with those of Scott and Rapp. (Doc. 13 at 2 ¶ 70.2.)

Thus, because Williams referenced these documents in his original Complaint or First Amended Complaint, it is appropriate for the Court to consider these documents in deciding the present motion. As such, the Court need not convert the DuPont's Rule 12(b)(6) motion into a motion for summary judgment.

### 1.  DuPont's Argument

DuPont argues that Williams' hostile work environment claim should be dismissed because he failed to administratively exhaust his claim under Title VII. (Doc. 52-1 at 2.) Further, with respect to section 1981, DuPont asserts that this Court "has already ruled that all discrete incidents of alleged discrimination arising before June 20, 2010 are time barred … [and] are not resurrected by claiming that these discrete acts give rise to a hostile work environment claim." (*Id.*)

DuPont claims that "[b]ecause a hostile work environment generally consists of multiple acts over a period of time, the requisite EEOC charge must be filed within 300 days of any action that contributed to the hostile work environment. (*Id.* at 8-9 (quoting *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 398 (5th Cir. 2007)).) Additionally, DuPont argues that the scope of Williams' lawsuit "is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (*Id.* at 9 (citing *Stewart v. May Dept. Stores*, 294 F. Supp. 2d 841, 848 (M.D. La. 2003)).)

 DuPont argues that "Williams only listed two discrete incidents of discrimination in his September 13, 2010 Charge: the January 24, 2010 schedule change and the April 6, 2010 write-

up." (*Id.* at 11.) DuPont claims that "Williams did not mention any other events, nor did he assert that his work environment was generally hostile." (*Id.*) DuPont further argues that the letter Williams submitted to the EEOC to amend his charge to add the additional event on January 31, 2014, where Williams was allegedly forced to use a vacation day, also failed to include "any charge or discussion of hostile work environment[.]" (*Id.*) As such, DuPont submits that "Williams is precluded by the four corners of his charge from asserting a claim of a hostile work environment," and, because of this, "[Williams'] hostile work environment claim under Title VII must be dismissed." (*Id.*) [6]

Next, with respect to section 1981, DuPont argues that the events prior to June 20, 2010 are not sufficiently related to post-June 20, 2010 claims, and, thus, are not actionable. (*Id.* at 12.) DuPont asserts that some of the events prior to June 20, 2010 are either spaced too far apart in time to be related or involved different employees. For example, DuPont claims that that some of the post-2010 conduct involved co-workers rather than the same supervisor, and that Williams' supervisor, Valentine, was transferred to a non-supervisory position, which constitutes an intervening act. (*Id.* at 12-15.)

Finally, DuPont argues that the post-June 20, 2010 conduct Williams' alleges does not plausibly state a claim for a hostile work environment. (*Id.* at 15.) DuPont concedes that Williams is a member of a protected class, but argues that the October 23, 2012 gesture Wade Miller made to Williams was not based on any racial motive. Additionally, DuPont contends that Williams' co-workers shunning him is not based on any racial motive and that "[t]he laws regarding discrimination do not require co-workers to like one another." (*Id.* at 17.)

---

[6] DuPont has suggested that Plaintiff "*might argue* that his reference to the charges of Scott and Rapp in his October 5, 2012 letter [to the EEOC's New Orleans Field Office] encompassed for Williams a charge for hostile work environment because Scott alleges [in his charge] that conditions at the plant were racially charged." (Doc. 52-1 at 11) (emphasis added). However, Williams has not raised any argument under Title VII with respect to Scott or Rapp's charges. Thus, the Court need not address DuPont's argument.

### 2. Williams' Argument

Williams counters that he "alleges a multitude of acts that are not 'one-time employment events' constituting only 'discrete acts' such as termination, failure to promote, denial of transfer, or refusal to hire." (Doc. 55 at 2.) Williams argues that he alleged "acts occurring over a series of years." (*Id.*) Williams claims that he "alleges DuPont has allowed a racially hostile supervisor who created a culture of racism at the plant to supervise [him] for eight years[.]" (*Id.*) He claims that his supervisor, Valentine, "remain[ed] in a position to influence all levels of management at the plant and to influence [his] work environment thereafter, even after [Valentine] was purportedly moved to a different position due to racism." (*Id.*)

Williams argues that he "alleges facts which show the acts are related, occurred with sufficient frequency and severity, and that at least one of the related acts occurred within the statutory period." (*Id.* at 3.) Williams claims that "[i]n an effort to contend otherwise, DuPont relied upon its carving up the facts in the complaints" which he claims "is not the proper approach for a hostile work environment claim." (*Id.*) Rather, Williams asserts that "the Supreme Court instructs that all of the circumstances are to be considered." (*Id.* citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 2074 (2002).)

Further, Williams argues that he has not failed to exhaust administrative remedies "with respect to his Title VII hostile work environment claim" because the scope of his lawsuit "is not limited to the exact charge brought to the EEOC." (Doc. 55 at 10 (citing *E.E.O.C. v. Resources for Human Development, Inc.*, 827 F.Supp.2d 688, 697 (E.D. La. 2011)).) Williams contends that "[t]he standard is not to review the actual EEOC investigation that grew out of the charge, but that which would reasonably be expected to grow out of the charge." (*Id.*) Williams claims the

charges should be examined with the utmost liberality because a lay person does not understand the rules of pleadings. (*Id.* at 9-10.)

Additionally, Williams' claims that the original EEOC charge filed on September 13, 2010, and the EEOC amendment from January 31, 2014, "complained of instances in which DuPont had come up with a new rule or new reason for disciplining African American employees that had not previously been imposed on other Caucasian employees." (*Id.* at 10.) Williams argues that his EEOC charge "was submitted within 300 days of 'any act that contributed to the hostile work environment' as required to render [his] hostile work environment claim under Title VII timely." (*Id.* (citing *E.E.O.C. v. WC&M Enterprises, Inc*, 496 F.3d 393, 398 (5th Cir. 2007)).)

Finally, Williams also requests leave to amend his complaint to allege more facts that have come to light over the course of discovery. (*Id.* at 7.) He argues that discovery has led to more information that would support the claim of a hostile work environment. (*Id.* at 7.) Plaintiff gives a few examples of such incidents, including ones within "the last few weeks." (*Id.* at 7–9.) These allegedly include: employees making racial comments about President Barack Obama, African American employees being subjected the "good ol' boy system;" EEOC findings of race discrimination at the plant; plant manager Tom Miller continuing a pattern of discrimination; Williams being sent home because there was no restricted duty work where Caucasian employees were not sent home; Valentine pushing Williams' African American co-worker; and that Williams "will allege that his treating physician opines that [Williams'] distrustful and hostile work environment has lasted so long that it has destroyed his ability to succeed in the DuPont Work Place." (*Id.*)

### 3. DuPont's Reply

DuPont argues that none of the facts cited by Plaintiff in the EEOC charge demonstrate a hostile work environment claim. (Doc. 57 at 2.) DuPont claims that Williams' EEOC charge "does not even hint at a hostile work environment claim." (*Id.* at 3.) Next, DuPont argues with respect to section 1981 that the only actions complained of by Williams after June 20, 2010 were two years after that day. (*Id.*) DuPont claims that this shows the pre-June 20, 2010 claims are unrelated.

With respect to Williams request for leave to amend his complaint, DuPont claims that Williams does not explain how the new facts would be timely or how they would state a plausible claim for a hostile work environment. (*Id.* at 4.) DuPont asserts that these new allegations are not a new legal theory based on the same conduct but wholly new conduct and occurrences that were not pled in the EEOC charge. (*Id.* at 4.) DuPont argues that Williams offers no excuse for not pleading these facts earlier and that most of the actions were alleged in two lawsuits filed in 2011 and 2014. (*Id.* at 4.)

DuPont claims that these new facts are not actionable under Title VII because Williams did not exhaust his administrative remedies. (*Id.*) DuPont argues that under section 1981, the pre-June 20, 2010 facts Williams seeks to allege occurred well before that date. (*Id.*) Finally, DuPont argues that the new allegations Williams proposes do not state a plausible hostile work environment claim. (*Id.* at 5.)

## II.     Motion to Dismiss Standard[7]

In *Johnson v. City of Shelby, Mississippi*, 574 U.S. ____, 135 S.Ct. 346 (2014), the Supreme Court has explained, "Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id*., 135 S.Ct. at 346-347 (citation omitted).

Interpreting Rule 8(a) and *Twombly*, the Fifth Circuit explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (emphasis added).

Analyzing the above case law, our brother in the Western District stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are

---

[7] The Court previously analyzed DuPont's prior motion to dismiss under Rule 12(b)(6). (Doc. 51 at 13-14.) However, it is important to note that "[t]here is some ambiguity in the Fifth Circuit regarding whether dismissal of a Title VII claim for failure to exhaust administrative remedies should be under Rule 12(b)(1) or Rule 12(b)(6)." *Chhim v. U. of Houston Clear Lake*, CIV. H-15-1272, 2015 WL 5252673, at *6 n. 8 (S.D. Tex. Sept. 9, 2015) (citations omitted). "[T]he Fifth Circuit has acknowledged a split in its panel decisions with respect to the appropriate rule when a plaintiff fails to exhaust." *Jones v. Jefferson Par.*, CIV.A. 12-2191, 2013 WL 871539, at *2 (E.D. La. Mar. 8, 2013) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction.")). This is "a particularly thorny intra-circuit split." *Hilliard v. Par.*, 991 F. Supp. 2d 769, 772 (E.D. La. 2014) (acknowledging split in authority).

Indeed, this Court has recently analyzed dismissal of a Title VII claim for failure to exhaust under Rule 12(b)(1). *See Ruh v. Super. Home Health Care, Inc.*, CV 15-439-SDD-SCR, 2015 WL 6870100, at *2 (M.D. La. Nov. 6, 2015). Even so, "it is clear that cases filed in the Fifth Circuit are subject to dismissal for failure to exhaust under Rule 12." *Canon v. Bd. of Trustees of State Institutions of Higher Learning of Mississippi*, 3:15CV9TSL-RHW, 2015 WL 5577222, at *7 n. 10 (S.D. Miss. Sept. 22, 2015) (citing *Chhim*, 2015 WL 5252673, at *6 n. 8). In this case, the Court will analyze DuPont's motion under Rule 12(b)(6) as it has done previously.

identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

Finally, in *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), the Fifth

Circuit recently summarized the Rule 12(b)(6) standard as thus:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502-03 (citations and internal quotations omitted).

**III.  Discussion**

**A.  Williams' Hostile Work Environment Claims Under Title VII**

Here, it must be determined whether Williams has administratively exhausted a hostile

work environment claim under Title VII.

### 1. Law on Exhaustion and Hostile Work Environment

Under Title VII, "[a] private plaintiff must exhaust [his] administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court." *Williams v. Louisiana*, CV 14-00154-BAJ-RLB, 2015 WL 5318945, at *3 (M.D. La. Sept. 11, 2015) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); 42 U.S.C. § 2000e–5(f)(1)). Generally, "[a] charge under [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). However, the "time period is extended to 300 days if 'the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice[,]'" such as Louisiana. *Conner v. Louisiana Dep't of Health & Hospitals*, 247 F. App'x 480, 481 (5th Cir. 2007).

The Fifth Circuit has explained the Title VII exhaustion requirement as thus:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." With that balance in mind, this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

*Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006) (internal citations omitted)

Further, as it relates to hostile work environment claims, the Fifth Circuit has explained:

> Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not "reasonably be expected to grow out of the charge of discrimination." [*Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)] (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws. In hostile work environment claims, however, if one act alleged to have created the hostile environment is timely exhausted, "a court may consider 'the entire scope of the hostile work environment claim.' " *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 2068, 153 L.Ed.2d 106 (2002)). To apply this "continuing violation doctrine ... the plaintiff must demonstrate that the separate acts are related." *Id.*

*Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Stewart*, 586 F.3d at 328 (quoting *Morgan*, 536 U.S. at 116). To determine whether a work environment is "hostile," a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

Additionally, there are three limitations on the "continuing violation" doctrine:

> First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts. [*Morgan*, 536 U.S.] at 118, 120, 122 S.Ct. 2061. Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. *Id.* at 118, 122 S.Ct. 2061. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to "honor

13

Title VII's remedial purpose 'without negating the particular purpose of the filing requirement.' " *Id.* at 120, 122 S.Ct. 2061 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234).

*Stewart*, 586 F.3d at 328.

Finally, this Court has previously explained:

The Fifth Circuit . . . [does] "not require that a Title VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." Nor does it "require, for purposes of exhaustion, that a plaintiff allege a prima facie case before the EEOC." "Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger."

*Martin v. Winn-Dixie Louisiana, Inc.*, No. 3:13-CV-00682-JWD, 2015 WL 1281943, at *6 (M.D. La. Mar. 20, 2015) (citing *Jeavons v. Exxon Mobil Corp.*, No. CIV.A. 13-753-JJB, 2014 WL 897425, at *2 (M.D. La. Mar. 5, 2014) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006))).

## 2. Williams' EEOC Charge

In this case, Williams made two primary allegations in his original EEOC charge. First, Williams alleged in the EEOC charge that he was subject to a schedule change on January 24, 2010 "for no reason." (Doc. 52-2 at 1.) Second, he alleged that on April 10, 2010 he was written up after he complained to his supervisor, George Valentine. (*Id.*) Williams' asserted in the charge that "[a]ccording to [Valentine] … the shift change occurred because [Williams] was weak and lacked confidence." (*Id.*) Further, "[t]he write-up ensued from incorrectly loading a chemical truck." (*Id.*)

DuPont argues that these two events that Williams complained of are discrete acts and that "Williams did not mention any other events, nor did he assert that his work environment was generally hostile." (Doc. 52-1 at 11.) On the other hand, Williams argues that a hostile work environment claim would reasonably grow out of his EEOC charge. (Doc. 55 at 10.) Further,

Williams argues that his charge should be examined with the utmost liberality because a lay person does not understand the rules of pleadings. (*Id.* at 9-10.)

Here, The Court is not persuaded by William's arguments. While it is true that courts are to construe an EEOC charge liberally, *see Pacheco*, 448 F.3d at 788, even a liberal reading of Williams' EEOC charge does not reasonably lead to a hostile work environment claim growing out of his allegations of discrimination and retaliation. Williams originally complained of two specific events, a transfer and a subsequent write up.

Further, Williams characterized the transfer as racial discrimination, and the write up as retaliation. (Doc. 52-2 at 1.) While Williams' characterizations are not fatal by themselves, as the Court is aware that EEOC charges are generally initiated *pro se*, *see Pacheco*, 448 F.3d at 788,[8] they are particularly informative as to the EEOC investigation that would reasonably grow out of his EEOC charge. There is no reference or allegation of a hostile work environment in Williams EEOC charge. As explained by the Southern District of Texas, "[a]lthough courts read the EEOC charges rather broadly to determine what EEOC investigations it can reasonably be expected to trigger, a failure to reference a claim in that charge may defeat that claim." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 852 (S.D. Tex. 2010) (quotations omitted).

Furthermore, the conduct Williams asserted in his EEOC charge does not show a workplace that is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Stewart*, 586 F.3d at 328. As such, a hostile work environment investigation could not reasonably grow from the allegations of Williams' EEOC charge. *See*,

---

[8] *See also Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005 (5th Cir. 1969) ("an individual drafting his charge as best he can without expert legal advice ... a single, poor ignorant employee with a grievance, not a sling shot in his hand, faces a huge industrial employer in this modern day David and Goliath confrontation.") (Brown, C.J.).

*e.g., Chhim v. U. of Houston Clear Lake*, CIV. H-15-1272, 2015 WL 5252673, at *3 (S.D. Tex. Sept. 9, 2015) (explaining that the plaintiff failed to "include in [his] charge any allegations related to his prior Title VII lawsuit" and, because of that failure, a claim that he was retaliated against because of his prior lawsuit did "not reasonably grow out of the allegations in his EEOC charge.").

Nevertheless, before deciding whether dismissal is appropriate, the Court must determine if Williams' EEOC amendment satisfies the exhaustion requirement.

### 3.  Williams' EEOC Amendment

Williams' submitted an EEOC amendment on January 31, 2014. (Docs. 52-1 at 11; 55 at 10.) Essentially, Williams contends that his EEOC amendment supports a hostile work environment claim, while DuPont argues it the amendment is merely another discrete act that does not support a hostile work environment claim.

EEOC regulations provide that "[a] charge may be amended to cure technical defects or omissions" and that such amendments "related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12 (b); *see also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003).

Here, Williams' January 31, 2014 EEOC amendment alleged new and distinct facts separate from his original charge. Williams alleged that that inclement weather occurred on January 24, 2014, making it unsafe for him to travel to work. (Doc. 52-6 at 1.) Williams claimed that his *new* supervisor, Elizabeth Cromwell, told him that he would have to come to work or take a vacation day. (*Id.*) Finally, because Williams missed work that day, he was docked a vacation day even though one of his Caucasian co-workers was not. (*Id.*)

16

Williams argues that his EEOC amendment along with his original charge "complained of instances in which DuPont had come up with a new rule or new reason for disciplining African American employees that had not previously been imposed on other Caucasian employees." (Doc. 55 at 10.) However, Williams' EEOC amendment makes no mention of any alleged rules that DuPont was enforcing on African American employees but not Caucasian employees.

Williams' EEOC amendment, and the events he alleges, occurred roughly four years after the transfer in his original EEOC charge. Further, he asserted new and distinct facts that cannot be said to "relate[] to or grow[] out of the subject matter of the original charge." 29 C.F.R. § 1601.12 (b). Thus, Williams' EEOC amendment does not relate back to his original charge and does not show that Williams' exhausted his administrative remedies for a hostile work environment claim.[9]

Accordingly, as Williams' original EEOC charge and EEOC amendment do not contain any facts that suggest a hostile work environment, a hostile work environment claim cannot reasonably grow out of the allegations of his charge. Thus, Williams' Title VII hostile work environment claim must be dismissed.

---

[9] While it appears clear that Williams failed to assert a hostile work environment claim in his 2014 EEOC supplement on its face, assuming *arguendo* that he had, his supplement still would not relate back to his original EEOC charge. "Generally, amendments [to an EEOC charge] that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning*, 332 F.3d at 878 (citations omitted). There is "one very narrow exception to this general rule." *Id.* at 789 "[A]n amendment, even one that alleges a new theory of recovery, can relate back to the date of the original charge when the facts supporting both the amendment and the original charge are essentially the same." *Id.* "[T]he question is whether the employee *already included* sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination." *Id.* (emphasis in original).

The events Williams alleged in 2014 are unrelated to the events of 2010, and, as the Court has explained, there are no facts in Williams' original EEOC complaint that would reasonably lead to a hostile work environment investigation. Thus, even if Williams had alleged a hostile work environment in his 2014 supplement, his supplement would not relate back to his original EEOC complaint.

**B.  Williams' Hostile Work Environment Claims under Section 1981**

Here, the Court must determine whether Williams' has plausibly stated a claim for hostile

work environment under 42 U.S.C. § 1981.

There is no exhaustion requirement under section 1981 for a hostile work environment

claim. "The use of section 1981 as an avenue for redress of employment discrimination is not

constrained by the administrative prerequisites [applicable to] Title VII claims…." *Walker v.*

*Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (overruled on other grounds) (citing *Scarlett v.*

*Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1050 (5th Cir. Unit B 1982)); *see also*, *Jones v.*

*Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) ("[T]he only substantive

differences between the [Title VII and section 1981] [are] their respective statute of limitations

and the requirement under Title VII that the employee exhaust administrative remedies.");

*Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011) ("42 U.S.C. § 1981 … does

not require the exhaustion of administrative remedies."); *Wagner v. Boh Bros. Const. Co.*, LLC,

CIV.A. 11-2030, 2012 WL 2576285, at *1 (E.D. La. July 3, 2012) (collecting cases).

As this Court has previously explained, "Courts analyze employment discrimination

claims brought under section 1981, including hostile work environment and retaliation claims,

under the same standards applicable to Title VII claims." *Wilson-Robinson v. Our Lady of the*

*Lake Regl. Med. Ctr., Inc.*, CIV.A. 10-584, 2011 WL 6046984, at *3 (M.D. La. Dec. 6, 2011)

(citing *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)); *see also*,

*Jones*, 427 F.3d at 992; *Wagner*, 2012 WL 2576285, at *1. For a hostile work environment claim

under section 1981, a plaintiff must establish that "(1) [he] belongs to a protected class; (2) [he]

was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the

harassment affected a term, condition or privilege of employment; and (5) the employer knew or

should have known of the harassment and failed to take remedial action." *Id.* at *2 (citing *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011)); *see also Jones v. Bd. of Supervisors of the U. of Louisiana System*, CV 14-2304, 2015 WL 7281614, at *4 (E.D. La. Nov. 15, 2015). Only two prongs, the third and fourth, are at issue in this motion.

To affect a term, condition, or privilege of employment, the race-based harassment must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citing *Ramsey*, 286 F.3d at 268). To determine whether a work environment is "hostile," a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey*, 286 F.3d at 268. The environment must have been "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez*, 641 F.3d at 125.

Furthermore, "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." *Lauderdale v. Texas Dept. of Crim. J., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (citing *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434-35 (5th Cir. 2005)). "The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists." *Id.*

As the Court held previously, Williams' "§ 1981 claims that arose prior to June 20, 2010 are time barred by the four year statute of limitations under 28 U.S.C. § 1658(a)." (Doc. 51 at

1.)[10] DuPont argues that "Williams cannot revive claims relating to untimely discrete discriminatory acts by alleging that they are part of a hostile work environment." (Doc. 52-1 at 13.) Conversely, Williams claims that he has alleged "facts which show the acts are related, occurred with sufficient frequency and severity, and that at least one of the related acts occurred within the statutory period[.]" (Doc. 55 at 3.) Williams contends that he has stated a claim for a hostile work environment and a continuing violation. (*Id.* at 2.)

The crux of this issue hinges on whether the facts Williams has alleged that occurred within the four-year limitations period – acts that occurred after June 20, 2010 – are related to those that occurred prior to the limitations period – before June 20, 2010. While the Court has stated the current standard for the continuing violation doctrine in ruling on the first motion to dismiss, it bears repeating here.

The Fifth Circuit has explained the continuing violations doctrine this way:

[The Fifth Circuit] has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003); *see also Huckabay v. Moore,* 142 F.3d 233, 238–39 (5th Cir. 1998). Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Felton v. Polles,* 315 F.3d 470, 487 (5th Cir. 2002) (*citing Messer v. Meno,* 130 F.3d 130, 135 (5th Cir. 1997)). The end goal of the continuing violation theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir. 2001); *see also Hardin v. S.C. Johnson & Son Inc.,* 167 F.3d 340, 344 (7th Cir. 1999).

---

[10] As explained in the first motion to dismiss, Williams "argued that 'his original complaint regarding pre-2010 conduct on the part of [DuPont] include allegations of unlawful promotion and transfer.' " (Doc. 51 at 20 citing Doc. 15 at 3-4.)

*Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).

> The Fifth Circuit then explained how *Morgan* has limited the doctrine:

> The Supreme Court recently clarified the limits of the continuing violations doctrine. In *Nat.'l R.R. Passenger Corp. v. Morgan,* the Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus, each discriminatory act starts a new clock for filing charges alleging that act. *Id.* In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment. Noting that repeated conduct constitutes a part of the nature of hostile environment claims, the Court held that hostile environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." *Id.* Therefore, *Morgan* makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period, and that claims based on hostile environment are only timely where at least one act occurred during the limitations period.

*Id.* at 279-80 (5th Cir. 2004).

> Moreover, as this Court has explained:

> This "doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)) (emphasis added). Further, the doctrine " 'requires the same type of discriminatory acts to occur both inside and outside the limitations period,' such that a valid connection exists between them." *Id.* (quoting *Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000)).

*Price v. PCS Nitrogen Fertilizer, L.P.*, CIV.A.03-153RETDLD, 2010 WL 1005181, at *4 (M.D. La. Mar. 15, 2010).

### 1.  Claims within the Limitations Period.

Here, with respect to those actions occurring after June 20, 2010 – within the limitations period – DuPont argues that there are only two allegations "which could conceivably give rise to a hostile work environment." (Doc. 51-2 at 14.) According to DuPont, these are the October 23,

2012 incident where "Wade Miller gestured in their direction, mocking them," and the allegation that Williams' co-workers are shunning him on a daily basis.[11] (Doc. 1 at 15-17 ¶¶ 58, 63.)

Conversely, Williams claims that two additional allegations support a hostile work environment claim. Williams asserts that on October 31, 2013 his pay was docked two hours "because he requested permission to make up his hours by staying late or coming in early" seemingly because his "father was about to undergo surgery." (Doc. 1 at 16 ¶ 60.) He claims that "[Elizabeth] Cromwell informed him that [he] would not be able to make up the hours and that he would have to either take a vacation or be docked." (*Id.*) Allegedly, this was not in accordance with DuPont policy, and "this type of action had never been taken against a DuPont employee." (*Id.*) Additionally, Williams claims the event on January 32, 2014, where Williams was allegedly forced to use a vacation day, when a Caucasian co-worker was not, supports a hostile work environment.

First, the 2012 "gesture" Wade Miller allegedly made towards plaintiff fails to satisfy at least two prongs of the five prong test to establish a hostile work environment. Williams merely alleged that a gesture was made in his direction that mocked him. Williams fails to assert that this harassment in the form of a gesture was based on a protected characteristic. Additionally, while the gesture may have been subjectively offensive to Williams, the vague allegation of single a mocking gesture is not objectively one that a reasonable person would find hostile or abusive.

Next, Williams' allegation that his co-workers shunned him fails to plausibly state a claim for a hostile work environment. Williams argues that he is "subjected to continued hostility

---

[11] Williams argues that DuPont improperly places a time period on his coworker's treatment of him to occurring post March 2013. (Doc. 55 at 5 n. 12.) After reviewing Williams' Complaint, it does not appear that Williams asserted when this alleged behavior began. Even so, Williams does claim this behavior occurs on a daily basis.

by co-workers." (Doc. 55 at 6.) On the other hand, DuPont asserts that "[t]he laws regarding discrimination do not require co-workers to like one another." (Doc. 52-1 at 17.)

DuPont is correct that "Section 1981 does not impose a general civility code, and when the standards are properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Burrle v. Plaquemines Par. Govt.*, CIV.A. 12-739, 2013 WL 2286113, at *4 (E.D. La. May 23, 2013), aff'd (Jan. 22, 2014) (citing *Jackson v. Wilson Welding Serv., Inc.*, Civ. A. No. 10–2843, 2012 WL 12807, *5 (E.D. La. Jan. 4, 2012) (quotations omitted). However, as explained above, [f]requent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists." *Lauderdale*, 512 F.3d at 163.

Even so, Williams is not specific as to whether this daily shunning is based on a protected characteristic. Nevertheless, given the entire scope of Williams' Complaint concerning alleged racial discrimination, in light most favorable to Williams, it is plausible that his being shunned is based on his race. At the same time, Williams has failed to allege how being shunned by his co-workers is "sufficiently severe or pervasive to alter the conditions of the [his] employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268.

In *Morash v. Anne Arundel County*, the plaintiff alleged that she " 'was ostracized and treated with scorn by co-workers and supervisors' who had learned of her complaint to internal affairs." CIV. JFM-04-2260, 2004 WL 2415068, at *3 (D. Md. Oct. 28, 2004). That court held that the plaintiff "[made] no specific factual allegation about the nature, severity, or pervasiveness of this treatment. Such allegations alone are insufficient to state a claim based on a hostile work environment against [the defendants.]" *Id.* Accordingly, that court granted the

defendants motion to dismiss. *Id.* at 6; *see also Evance v. Trumann Health Services, LLC*, 3:11CV00025, 2012 WL 2282555, at *5 (E.D. Ark. June 18, 2012) *aff'd*, 719 F.3d 673 (8th Cir. 2013) ("Plaintiff's allegations of feeling ostracized and not being a part of the 'clique' are insufficient to establish a hostile work environment.")

Similarly here, Williams has not alleged any facts concerning the nature, severity, or pervasiveness of his co-workers shunning him. Rather, Williams merely alleged that when he walks into "the control room, other workers get quiet," that "[w]hen he is running the board, no one comes into the control room," and that "co-workers basically shun him and enter the same room where [he] is only if they have to." (Doc. 1 at 17 ¶ 63.) Because "section 1981 does not impose a general civility code," *Burrle*, 2013 WL 2286113, at *4, and Williams has made no factual allegations to suggest frequently being shunned by his co-workers reaches the "level of 'pervasive,' " *Lauderdale*, 512 F.3d at 163, Williams allegations of shunning are insufficient to support a hostile work environment claim.

Next, Williams allegation that he was docked two hours pay on October 31, 2013, and that he was told by a Caucasian co-worker that "this type of action had never been taken against a DuPont employee before" (Doc. 1 at 16 ¶ 60) must fail as well. While it appears that Williams has attempted to show that he was docked pay because of his race by asserting a Caucasian co-worker told him this action had not been done before, even in light most favorable to Williams, this claim still does not show that he was docked two hours pay because of a protected characteristic.

Finally, Williams has alleged that on January 24, 2014 he was forced to take a days' worth of vacation time because he missed work due to inclement weather, but that a Caucasian co-worker was not. (Doc. 1 at 16 ¶ 61.) On its face, this is based on Williams' race. Even so, this

appears to be an isolated incident unrelated to the other timely events. Even looking at the incident where Williams was docked pay by the same supervisor, roughly three months prior, these two events construed together are not sufficiently severe or pervasive to alter the conditions of the Williams employment.

### 2. Claims Outside of the Limitations Period

Here, the Court must also look to those actions that occurred outside of the limitations period in order to determine whether Williams "can show a series of related acts, one or more of which falls within the limitations period." *Pegram*, 361 F.3d at 279.

Williams claims that "[a]ll of the alleged related acts must be taken together in assessing [his] hostile work environment claim[.]" (Doc. 55 at 7.) While Williams is generally correct, *see Pegram*, 361 F.3d at 279, as this Court has recently explained, " 'discrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment' and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine." *Boyd v. Trinity Industries, Inc.*, CIV.A. 14-00469-SDD, 2015 WL 3969464, at *2 (M.D. La. June 30, 2015) (citing *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 888 (W.D. La. 2003)); *see also Pegram*, 361 F.3d at 280 (applying *Morgan* to section 1981 claims).

Thus, the alleged untimely transfer and write up, which are discrete discriminatory acts, which occurred in early 2010, "cannot be saved by the continuing violation doctrine." *Id.* Even if the Court were to consider the alleged transfer and write up, they are unrelated to the timely allegations. The transfer and write up involved a different supervisor than the docked pay and vacation day, and occurred several years prior to the timely allegations. Further, Williams' co-workers were not involved in either the transfer or the write up.

25

Williams does advance the argument with respect to the write up that he has alleged physically intimidating conduct related to the alleged retaliatory write-up. (Doc. 55 at 6-7.) Williams claims that when he attempted to get a copy of the write up from his supervisor, Valentine, Valentine threw the write up at him, then later snatched it out of his hand which Williams claims was "extremely hurtful" to him. (Doc. 55 at 6-7 (citing Doc. 1 at 9 ¶ 38).) However, "[h]ostile work environment jurisprudence is not designed to 'prohibit all verbal or physical harassment in the workplace[.]' " *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 443 (5th Cir. 2011) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 77, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Simply put, having a piece of paper thrown at a plaintiff and then later snatched out of his hands is not the type of physical harassment, nor the type of egregious isolated incident, contemplated by hostile work environment jurisprudence. *See Mathirampuzha v. Potter*, 548 F.3d 70, 78-79 (2d Cir. 2008) (holding that a physical altercation where co-worker "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye" was not severe enough to create hostile work environment under Title VII).

Next, Williams argues that his allegation that Valentine "often refers to African American employees as 'the brothers' and to Caucasian employees as 'buddy', 'bud' or 'bubba' " (Doc. 55 at 6 (citing Doc. 1 at 2 ¶ 8) supports a hostile work environment claim. Williams places no specific timeline on these references, though it is reasonable to infer that they were continuous. However, importantly, Williams also alleged that in May 2010 "Valentine was transferred to a different position at the same worksite," that this move was to a "nonsupervisory role." (Doc. 1 at 12-13 ¶¶ 49-50.) As explained above, "[i]ntervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding

liability for preceding acts outside the filing window." *Stewart*, 586 F.3d at 328. Thus, this claim is not actionable because Valentine was transferred to a nonsupervisory role.

Finally, Williams argues in 2007, Valentine's correction of his grammar over a plant wide radio, supports a hostile work environment. (Doc. 55 at 6.) First, as explained above, Valentine was transferred from his supervisory role in 2010. Second, it is unclear exactly what date in 2007 this occurred. The Fifth Circuit has held "that a 'three year break' will defeat any attempt to establish a continuing violation." *Butler v. MBNA Tech., Inc.*, 111 Fed. Appx. 230, 234 (5th Cir. 2004) (citing *Felton*, 315 F.3d at 486). Thus, it appears on the face of Williams' Complaint that this claim must be dismissed. Lastly, even if this claim were properly before the Court, a single instance of having grammar corrected is not severe enough alter the terms, conditions, or privileges of Williams employment.

In sum, for the reasons set forth above, Williams has failed to state a claim for a hostile work environment under section 1981. Accordingly, Williams' claim for a hostile work environment under section 1981 must be dismissed. Williams' hostile work environment claim under section 1981 is dismissed with prejudice.

### C.  Williams' Request for Leave to Amend

Here, the Court must determine whether to grant Williams leave to amend his complaint. The Fifth Circuit has explained that:

> Fed.R.Civ.P. 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court. However, the court should freely give leave to amend "when justice so requires." It is often said that this determination rests in the sound discretion of the district court. However, the Rule "evinces a bias in favor of granting leave." The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism. Thus, if the district court lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial."

> Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment.

*Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (citations omitted).

As an initial matter, Williams' request for leave to amend is contained in his opposition to DuPont's Motion to Dismiss. (Doc. 55 at 7.) While generally a plaintiff requests leave to amend in a formal motion, it is acceptable in this circuit for a plaintiff to request leave to amend in an opposition. Even so, a request for leave to amend in an opposition must meet certain requirements. As explained by the Fifth Circuit:

> Rule 15(a) applies where plaintiffs "expressly requested" to amend even though their request "was not contained in a properly captioned motion paper." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 701 (5th Cir. 1988). A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought. Fed.R.Civ.P. 7(b)(1), 15(a); *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445–46 (9th Cir. 1990). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed.R.Civ.P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993).

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

Here, Williams has expressly requested leave to amend his complaint and claims that the additional facts he seeks to allege will support his hostile work environment claim. (Doc. 55 at 7.) Thus, the Court will consider Williams request for leave to amend.

This would be Williams's third amendment to his Complaint. (*See* First Amended Complaint, Doc. 13; Second Amended Complaint, Doc 30.) As explained above, Williams has failed to exhaust his administrative remedies for a hostile work environment under Title VII. He

cannot overcome this hurdle by alleging facts that were not contained in his EEOC complaint. Thus, any attempt to amend his complaint with respect to Title VII would be futile.

Next, with respect to section 1981, Williams seeks to allege several untimely and unrelated acts. First, Williams seeks to amend his complaint to allege that several racist comments were made when President Barack Obama was elected in 2008 and that he "knew of these comments and was offended by them as were other African Americans at the plant." (Doc. 55 at 8.) Not only is this event untimely, it is not an actionable claim because, as this Court has recently explained:

> The " 'mere utterance of an ... epithet which engenders offensive feelings in a employee' does not sufficiently affect the conditions of employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) (quoting [*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986)]) "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

*Lewis v. Brown*, CIV.A. 14-435-JWD-SC, 2015 WL 803124, at *6 (M.D. La. Feb. 25, 2015), *appeal dismissed* (May 29, 2015).

Second, Williams seeks to amend his complaint to show that being sent home in December 2012 because "DuPont did not have work that would meet the restrictions posed by his stress-related work emotional illnesses and a hip injury," (Doc. 1 at 16 ¶ 59) "was another creation and enforcement of a rule that had not been implemented with respect to a Caucasian employee at DuPont Burnside." (Doc. 55 at 9.) However, Williams offers little beyond his broad conclusory statement. Williams does not seek to assert additional *facts* to support his conclusion.

"The court is not to give the 'assumption of truth' to conclusions[.]" *Oceanografia*, 2011 WL 938785, at *3.[12] As such, an amendment would be futile.

Finally, Williams seeks to amend his complaint to assert that "in the last few weeks, the plant manager Tom Miller, who is alleged herein to have continued the pattern of discrimination at Burnside, has been assigned a new title at DuPont and has been moved to work in the same trailer office at DuPont Burnside that houses George Valentine and Don Janezic who were moved in 2010 and 2011 in whole or in part due to race issues." (Doc. 55 at 8.) In addition, Williams claims, in support his hostile work environment theory, that Valentine pushed one of his African American co-workers. (*Id.*) However, the second prong of a hostile work environment claim requires a plaintiff to show that "[he] was subjected to unwelcome harassment." *Wilson-Robinson*, 2011 WL 6046984, at *3. Thus, amendment would be futile because Williams' claims are unrelated to how *he* was subject to unwelcome harassment.[13]

In sum, after reviewing Williams' request for leave to amend, the Court finds that the events that Williams seeks to allege are untimely, unrelated, and conclusory. Thus, Williams request for leave to amend is denied.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that E.I. du Pont de Nemours and Company's Motion to Dismiss Hostile Work Environment Claims Under Rule 12(b)(6) (Doc. 52) is hereby **GRANTED**;

---

[12] In the same way, Williams' request for leave to amend to allege that "his treating physician opines that [Williams'] distrustful and hostile work environment has lasted so long that it has destroyed his ability to succeed in the DuPont work place," (Doc. 55 at 7-9) is conclusory as well.

[13] Similarly, Williams also desires to assert that the EEOC has made two findings of race discrimination at DuPont in April 2010 with respect to Byran Geason and November 2014 with respect to Nathaniel Rapp. Again, EEOC findings with respect to two other employees fails to show how Williams was subjected to unwelcome harassment.

DuPont's Motion to Dismiss is **GRANTED** in that, under Title VII, Allen Williams has failed to exhaust his administrative remedies for a hostile work environment because a hostile work environment claim cannot reasonably grow out of the allegations of Williams' original EEOC charge and EEOC amendment. Thus, Williams' hostile work environment claim under Title VII is **DISMISSED WITHOUT PREJUDICE**. [14]

DuPont's Motion to Dismiss is **GRANTED** in that, under section 1981, Williams has failed to allege sufficient facts to establish a hostile work environment. Thus, Williams' hostile work environment claims under section 1981 are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Williams request for leave to amend (Doc. 55 at 7) is **DENIED** in that Williams request is futile because he seeks to allege untimely, unrelated, and conclusory facts.

Signed in Baton Rouge, Louisiana, on <u>December 30, 2015</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[14] DuPont has requested for Williams' hostile work environment claims to be dismissed with prejudice. (Doc. 52-1 at 2.) However, as noted above, there is "a particularly thorny intra-circuit split" as to whether failure to exhaust Title VII claims are subject to dismissal under 12(b)(1) or 12(b)(6). *See, supra,* note 7. Furthermore, "[t]o dismiss with prejudice under Rule 12(b)(1) is to disclaim jurisdiction and then exercise it. [Fifth Circuit] precedent does not sanction the practice[.]" *Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N.A., Inc.*, 544 Fed. Appx. 455, 456 (5th Cir. 2013) (unpublished) (citations omitted). While the Court analyzed the present motion under Rule 12(b)(6), because of the intra-circuit split on this issue, and because the Court previously dismissed Williams' Title VII claims that were prior to 2010 for failure to exhaust administrative remedies without prejudice, (Doc. 51 at 24) the Court declines to dismiss Williams' claim with prejudice.